J-S04028-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRIAN J. O'DOHERTY | |
| Appellant | No. 903 MDA 2019 |

Appeal from the Judgment of Sentence May 7, 2019
In the Court of Common Pleas of Schuylkill County
Criminal Division at No: CP-54-CR-0001958-2018

BEFORE:  OLSON, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:　　　　　**FILED: JULY 8, 2021**

Appellant, Brian J. O'Doherty, appeals from the May 7, 2019 judgment of sentence imposing four to ten years of incarceration for possession with intent to deliver ("PWID") controlled substances[1] (heroin, methamphetamine, and fentanyl), possession of controlled substances,[2] conspiracy,[3] and related offenses.  Appellate counsel has filed a brief and petition to withdraw in accordance with **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  We vacate

---

[1]  35 P.S. § 780-113(a)(30).

[2]  35 P.S. § 780-113(a)(16).

[3]  18 Pa.C.S.A. § 903.

Appellant's judgment of sentence and remand for further proceedings consistent with his memorandum and deny counsel's petition to withdraw.

The charges against Appellant arose from a warrant executed on the residence of co-defendant Anthony Nelson at 222 South Street, Minersville, Schuylkill County. Appellant was present alone in Nelson's residence during the execution of the warrant. Appellant was smoking a marijuana blunt as police entered the residence; they recovered it from an ashtray next to where Appellant was sitting. Also, there was a silver box near Appellant's feet from which police recovered the controlled substances that resulted in the PWID charges. In statements to police and in one court hearing, Nelson claimed that the substances in the silver box belonged to him. He later recanted, claiming he took responsibility for the drugs in the silver lockbox only after Appellant threatened him. At trial, Appellant's counsel cross-examined Nelson on his change in testimony and challenged Nelson's credibility during closing argument. The jury found Appellant guilty of the aforementioned charges and the trial court imposed sentence as set forth above. This timely appeal followed.

On January 22, 2020, this Court remanded for a *Grazier*[4] hearing to determine whether Appellant wished to proceed *pro se* or with counsel. At the February 20, 2020 *Grazier* hearing Appellant claimed that he asked

_____

[4] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

counsel to supplement the **Anders** Brief with a claim of newly discovered evidence. N.T. Hearing, 2/20/20, at 4, 7. Counsel claimed he was unaware of the newly discovered evidence claim prior to the hearing. **Id.** at 8. At the conclusion of the hearing, Appellant informed the court that he did not wish to proceed *pro se*. **Id.** at 11.

Before turning to the merits, we examine counsel's compliance with **Anders** and **Santiago**. Counsel's brief must do the following:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. The **Anders** brief provides a summary of the procedural history and facts. **Anders** Brief at 6-8. Likewise, the brief refers to items—including the lack of direct evidence of Appellant's awareness of the controlled substances in the sliver box and the lack of evidence of conspiracy other than Nelson's allegedly polluted testimony—that arguably support Appellant's appeal. **Anders** Brief at 5. The body of the **Anders** Brief addresses the issues Appellant wished to raise, and counsel's reasons for concluding that they are frivolous. In these respects, Counsel's brief complies with the dictates of **Santiago**. However, because of Appellant's claim of newly discovered evidence—which counsel has not addressed—we remand for further proceedings.

We begin by addressing the issues in counsel's **Anders** Brief because the sufficiency arguments, if successful, would result in an acquittal and discharge. The remaining issues may repeat themselves in the event of a retrial. Our standard for reviewing the sufficiency of the evidence is *de novo*. **Commonwealth v. Rushing**, 99 A.3d 416, 420 (Pa. 2014). "[O]ur scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as verdict winner." **Id.** at 420-21. Unlawful possession of a controlled substance occurs where the perpetrator knowingly or intentionally possesses a controlled substance without lawful justification, such as a prescription. 35 P.S. § 780-133(a)(16). PWID occurs where the perpetrator possesses a controlled substance with intent to deliver it to another. 35 P.S. § 780-113(a)(30).

As noted above, the record read in a light most favorable to the Commonwealth as verdict winner reflects that one officer saw Appellant smoking a marijuana blunt when police entered Nelson's home. A sliver box near Appellant's feet contained heroin, methamphetamine, and fentanyl. Nelson testified that the silver box belonged to Appellant, and that Appellant gave Nelson drugs to sell to others.

In his *pro se* response to counsel's **Anders** brief, Appellant claims the evidence is insufficient because Nelson lacked credibility in testifying that the drugs in the silver box belonged to Appellant. Nelson acknowledged lying

under oath in a previous proceeding in which he claimed all the drugs were his.  N.T. Trial, 4/4/19, at 82-83.  In any event, credibility goes to the weight, not sufficiency, of the evidence.  ***Commonwealth v. Gibbs***, 981 A.2d 274, 281-82 (Pa. Super. 2009), ***appeal denied***, 3 A.3d 670 (Pa. 2010).  Appellant did not preserve a weight of the evidence challenge before sentencing or in a post-sentence motion.  ***See*** Pa.R.Crim.P. 607(A).  Given the facts of record, we agree with counsel's conclusion that a challenge to the sufficiency of the evidence is frivolous.

Next, the ***Anders*** Brief addresses the sufficiency of the evidence in support of Appellant's conspiracy conviction.   Once again, Appellant's argument rests on the credibility of Nelson—Appellant wishes to argue that there was no evidence of a conspiracy other than Nelson's polluted testimony. The record reveals that the trial court gave the jury a polluted source instruction.  N.T. Trial, 4/4/09, at 158; ***see Commonwealth v. Chmiel***, 639 A.2d 9, 13 (Pa. 1994) ("It is well established that in any case were an accomplice implicates the defendant, the judge should tell the jury the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution.").  The jury evidently found Nelson credible, despite the polluted source instruction and despite his acknowledgement on the witness stand that he previously lied under oath about the facts of this case.  Contrary to Appellant's argument, the Commonwealth did not need to produce independent evidence to procure a conviction.  ***See Commonwealth v.***

- 5 -

*Bricker*, 581 A.2d 147, 150 n.5 (Pa. 1990) (quoting standard Pennsylvania jury instructions, which provide that a jury may convict based on an accomplice's testimony even if no independent evidence supports the testimony). We likewise find this issue to be frivolous.

Next, the *Anders* brief addresses Appellant's argument that the prosecutor improperly vouched for Nelson's credibility during closing argument.

> It is axiomatic that vouching is a form of prosecutorial misconduct, occurring when a prosecutor places the government's prestige behind a witness through personal assurances as to the witness's truthfulness, and when it suggests that information not before the jury supports the witness's testimony. Improper bolstering or vouching for a government witness occurs where the prosecutor assures the jury that the witness is credible, and such assurance is based on either the prosecutor's personal knowledge or other information not contained in the record.

*Commonwealth v. Johnson*, 179 A.3d 1105, 1121 (2018) (internal citations and quotation marks omitted), *appeal denied*, 197 A.3d 1174 (Pa. 2018). Appellate Counsel was unable to find any portion of the closing argument in which the prosecutor did so, and neither can we. In his *pro se* response, Appellant does not identify anywhere in the record in which the prosecutor improperly vouched for Nelson's credibility. Rather, the prosecutor in his closing responded to defense counsel's attacks on credibility but did not vouch for Nelson's credibility. The prosecutor based his arguments on evidence that was before the jury. Once again, we find this issue to be frivolous.

Appellant also wishes to argue that counsel was ineffective for stipulating to the admissibility of the report documenting the amount of controlled substances recovered during execution of the warrant. Subject to limited exceptions not presently applicable, this issue must await collateral review. **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013).

Finally, Appellant wishes to argue that the search warrant was insufficiently specific. The record reveals that the warrant specified the premises to be searched as 222 South Street, Minersville, Schuylkill County, Pennsylvania, and the persons to be searched as Nelson and "others yet unknown." Search Warrant, 5/29/18. The applicable law is as follows:

> [W]e restate the law under Article I, Section 8 as follows: where a search warrant adequately describes the place to be **searched** and the items to be seized the scope of the search extends to the entire area in which the object of the search may be found[.] Therefore, so long as police have reason to believe the specific items to be seized may be found throughout a single family residence, Article I, Section 8 does not preclude a search of the entire residence regardless of whether a particular individual not named in the warrant has an expectation of privacy in certain areas of that residence.

**Commonwealth v. Turpin**, 216 A.3d 1055, 1069 (Pa. 2019) (internal citations and quotation marks omitted). Counsel attached the warrant as an exhibit to the **Anders** Brief, but the exhibit lacks the affidavit of probable cause. The warrant refers to the affidavit for a list of items to be searched. We have been unable to locate the original warrant and affidavit in the certified

record. We are therefore unable to assess the merit, if any, of this argument.[5]

On remand, we direct counsel to ensure the completeness of the record and to examine this issue further.

We now turn to Appellant's *pro se* response to counsel's **Anders** Brief. In it, Appellant argues that he informed counsel of new evidence that Appellant discovered several weeks after trial. The evidence involved a prison corrections officer, "C.O. Oliver."[6] According to Nelson's trial testimony, Oliver, a corrections officer inside the jail, informed Nelson that Appellant "put out a hit" on him. N.T. Trial, 4/4/19, at 83. Nelson claimed that Appellant threatened Nelson's life on two occasions, once at gunpoint while both were out on bail, and once through Oliver. *Id.* at 97, 100; Defendant's Trial Exhibit 2. Nelson first divulged this information by letter to police. In pertinent part, the letter provides:

> The only reason that I testified that all the drugs were mine is because I was in fear of my life. [M]e and my celly were getting meds when C.O. Oliver[7] told me [Appellant] said he will put a hit out on me if I don't kick that bitch out of my house. Lisa Colna is

---

[5] Appellant seemingly challenges both the particularity of the warrant and the search of his person incident to arrest (one officer testified that Appellant was smoking a marijuana blunt as police entered Nelson's home to execute the warrant). We leave it to counsel to clarify the issue on remand.

[6] This person is referred to in the record variously as "C.O. Oliver" and "C.O. Olivet." For consistency, we use "Oliver".

[7] The letter "r" at the end of Oliver's name in Nelson's handwritten letter can be read either as an "r" or a "t." This appears to be the reason for the confusion in the record over Oliver's surname.

who he was talking about because she witnessed [Appellant] threaten me with the gun.

Defendant's Trial Exhibit 2. During closing argument, defense counsel criticized the Commonwealth for not calling Oliver to corroborate Nelson's testimony, and for not calling Lisa Colna to testify that she saw Appellant threaten Nelson with a gun. N.T. Trial, 4/4/19, at 138.

Appellant claims Oliver approached him after trial and told him of an interview with the district attorney in which Oliver denied that Appellant conveyed to Oliver a threat toward Nelson. Oliver also denied conveying any such threat to Nelson.

As noted above, Appellant raised this issue in the *Grazier* hearing on remand from this Court:

> THE COURT: What's the basis of any claim of a *Brady* violation?
>
> THE DEFENDANT: Your Honor, I have it here in the copy of this letter. The District Attorney's Office contacted a witness to corroborate Anthony Nelson's statement; namely, a corrections officer before trial. And the officer did not corroborate, told him that this never happened.
>
> The District Attorney's Office never told my lawyer nor myself about it, which is exculpatory evidence. They never released any of this information to me. I have it right here in this letter with the receipt. It states right here plainly that I sent it to this lawyer. He never contacted this corrections officer, never even –
>
> THE COURT: How did you find out about this?
>
> THE DEFENDANT: The correction officer actually told me about it when – after trial. He said, why didn't your lawyer call me? I said, Call you for what? He said, the DA's officer called me. I said, why did the DA's office call you? And he said, They just

called me a couple of days ago and asked me about this letter or something, called me and asked me about something. And I was like, I don't know. And I've been mentioning it ever since, and nobody wants to bring it up.

THE COURT: How long after trial did you find this information out?

THE DEFENDANT: Probably, -- it had to have been maybe a couple weeks after. It was a couple weeks after. And I wrote to [trial counsel]. I mentioned it to [trial counsel]. Like I said – I have it here, Your Honor, in this letter that I sent to him. And nothing.

[Appellate Counsel]: Your Honor, I'm looking at this letter now for the first time next to me. I don't recall anything like that whatsoever.

N.T. Hearing, 2/20/20, at 7-8.

Appellant refers to this issue variously as a ***Brady***[8] claim (based on the prosecutions failure to disclose the interview with Oliver) and a claim of newly discovered evidence (based on Appellant's allegation of what Oliver told him

---

[8] The elements of a claim pursuant to ***Brady v. Maryland***, 373 U.S. 83 (1963), are as follows:

To establish a ***Brady*** violation, a defendant must show: the prosecution suppressed the evidence, either willfully or inadvertently; the evidence is favorable to the defense; and the evidence is material. [E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense.

***Commonwealth v. Birdsong***, 24 A.3d 319, 327 (Pa. 2011) (internal citations and quotation marks omitted).

after trial). In substance Appellant argues it as the latter, and we will analyze it as such. Appellant cites **Commonwealth v. Rivera**, 939 A.2d 355 (Pa. Super. 2007), in which the Commonwealth's lab technician (who testified as to the amount of drugs involved in the defendant's case) was exposed as corrupt in a newspaper article published while the defendant's case was on appeal. This Court cited Criminal Procedure Rule 720(C): "A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C). The official comment to Rule 720(C)

> Unlike ineffective counsel claims, which are the subject of **Commonwealth v. Grant**, 572 Pa. 48, 813 A.2d 726 (2002), paragraph (C) requires that any claim of after-discovered evidence must be raised promptly after its discovery. Accordingly, after-discovered evidence discovered during the post-sentence stage must be raised promptly with the trial judge at the post-sentence stage; **after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge**; and after-discovered evidence discovered after completion of the direct appeal process should be raised in the context of the PCRA. **See** 42 Pa.C.S. § 9545(b)(1)(ii) and (b)(2) (PCRA petition raising after-discovered evidence must be filed within 60 days of date claim could have been presented). **Commonwealth v. Kohan**, 825 A.2d 702 (Pa. Super. 2003), is superseded by the 2005 amendments to paragraphs (A) and (C) of the rule.

Pa. R. Crim. P. 720, comment (emphasis added). Relying on the official comment, the **Rivera** Court recited the test for after-discovered evidence[9] and remanded for a hearing on the defendant's after-discovered evidence claim. **Rivera**, 939 A.2d at 359. The **Rivera** Court reasoned that the trial court should address the issue in the first instance.

We will follow the **Rivera** Court's lead in this case, remanding for the trial court to analyze Appellant's claim under the test for newly discovered evidence. We are cognizant that C.O. Oliver was identified during trial, and that defense counsel criticized the prosecution for not producing him as a witness. It is unclear what, if anything, prevented defense counsel from calling Oliver as a witness at trial. We leave it to the parties and the trial court to address this issue on remand.

For all the foregoing reasons, Appellant's judgment of sentence is vacated and this matter is remanded for an evidentiary hearing consistent with this Memorandum in order to determine if a new trial is required based upon either after-discovered evidence or a defective search warrant, and, if

---

[9] The test is as follows:

> To warrant relief, after-discovered evidence must meet a four-prong test: (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely.

**Rivera**, 939 A.2d at 359.

not, for the re-imposition of sentence. Counsel's application to withdraw is denied.

Judgment of sentence vacated, case remanded, petition to withdraw as counsel denied. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/08/2021